**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL MCCLANAHAN, | ) | CASE NO. 1:13 CV 1440 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| WARDEN KELLY, *et al.*, | ) | <u>AND ORDER</u> |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Michael McClanahan filed this action under 42 U.S.C. § 1983 against Grafton Correctional Camp ("GCC") Warden Kelly, GCC Unit Manager Kastler, and GCC Sgt. True.  In the Complaint, Plaintiff alleges Sgt. True harassed him, made racists comments to him, and orchestrated conduct charges against him.  Although he is no longer at GCC, he seeks a transfer to the Mansfield Correctional Institution.  He also requests $115.00 for damaged clothing, monetary compensation to his mother for gasoline to facilitate visits with him in Mansfield, $12,172.50 "to ease the transition to society," an "80% early release hearing with the Department of Rehabilitation and Correction, and payment of one semester of college at the school of his choice upon his release from prison.  (Doc. No. 1 at 8).

**Background**

Plaintiff complained to Sergeant True about the behavior of Corrections Officer Gamble. Plaintiff told True that Gamble shook his bed every morning and "carelessly woke [him] for no

reason." (Doc. No. 1-1 at 1).  True told him that if an officer "wanted to 'snatch' [him] off of [his] rack, he would be well within reason."  (Doc. No. 1-1 at 1).  Plaintiff claims he asked to speak to another officer and True asked Plaintiff if he considered him to be a racist.  Plaintiff claims he indicated to True that he did consider him to be a racist, and pointed out that True had told him that he enjoyed "coon hunting," and that his ancestors had owned slaves. (Doc. No. 1-1 at 1).  Plaintiff also reminded True that he had asked Plaintiff if he held his gun sideways "like all black guys do." (Doc. No. 1 at 4).  He alleges True then asked him if he "knew there was a seed called a 'nigger seed'" and suggested the term "'nigger' shouldn't offend  anyone because 'nigger' is right on the label." (Doc. 1-1 at 2).

Plaintiff was brought before the Rules Infractions Board (RIB) for the incident that occurred with Gamble.  He does not give any indication of the nature of the conduct charges against him, but claims he spent fifteen days in segregation before he was found not guilty.  He alleges that while he was in segregation, his clothes were "accidently" thrown away.  He tried to obtain replacements but the quartermaster indicated he could not issue new clothing unless True called him to authorize it.  Plaintiff states True refused to make the call, and he had to wear the same clothes until he could afford to buy replacements.

After the RIB hearing, Plaintiff filed an informal grievance against True with Unit Manager Kastler indicating that True made racist comments to him.  Kastler responded by stating, "Investigation is complete.  Issue is resolved." (Doc. No. 1-1 at 1).

Plaintiff's cell was searched on February 19, 2013 by Officers Harris and Doherty.  A CD player and a remote control were taken as contraband.  Plaintiff received a conduct report which indicated the CD player had the identification number removed or altered and the remote control

had another inmate's name etched onto it.  Furthermore, the officers indicated razor blades were stored in the battery compartments.  Plaintiff disputes the charges.  He contends True called Lieutenant Garcia to give him a report.  Plaintiff claims Garcia investigated the report, and then failed to recuse himself as a member of the RIB.  Plaintiff asserts this violated Ohio Department of Rehabilitation and Correction policy.  He was found guilty at the RIB hearing and was sentenced to fifteen days in segregation.  He claims there was no evidence to support his conviction and he appealed that decision.  The Deputy Warden affirmed the board's finding of guilt.  As a result of the charges, Lieutenant Garcia raised Plaintiff's security classification.

Thereafter, Plaintiff filed another grievance against True.  He claimed that True was biased when dealing with inmates, and suggested True had been disciplined in the past for calling Plaintiff racially derogatory names.  He then claimed the property he had in his possession should not have been considered contraband.  Institutional Inspector Darlene Krandall denied the grievance stating that Plaintiff could not challenge the results of a conduct hearing through a grievance.  Krandall also admonished Plaintiff for lying within the grievance process indicating that True was not reprimanded for calling Plaintiff  racial epithets.  Krandall indicated the investigation of True concerned the conversation True allegedly had with Plaintiff concerning Plaintiff's belief that True was a racist.  Plaintiff now claims Kastler condoned True's action because she did not discipline him.  He claims he was denied equal protection.

## Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which

relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U .S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), further explains the "plausibility" requirement, stating that " a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

-4-

unlawfully." *Id.*  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### Analysis

Plaintiff 's only claim asserts a denial of equal protection.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).  The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Warden Kelly and Unit Manager Kastler did not participate in the actions which Plaintiff claims denied him equal protection.  He does not allege any facts against Kelly.  He alleges only that Kastler gave him the impression that True was disciplined, and he now believes True was not reprimanded for his behavior.  Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  The Complaint simply contains no facts which reasonably associate Kelly and Kastler to the behavior Plaintiff claims denied him equal protection.

It is possible that Plaintiff names Kelly and Kastler because they are True's supervisors. Plaintiff cannot hold a supervisor liable for the actions of an employee under a theory of *respondeat*

*superior* based on the supervisor's right to control the employee or the supervisor's failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. *Id.* In order for liability to attach to any of these supervisors, Plaintiff therefore must allege facts to suggest that they did more than play a passive role in the alleged violations or show mere tacit approval of True's actions. *Id.* Plaintiff must show that the supervisors somehow encouraged or condoned the conduct. *Id.*; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995).

Plaintiff does not allege facts to suggest Kelly or Kastler actively condoned or encouraged True's actions. Again, Plaintiff did not include allegations against Kelly in his Complaint. He contends Kastler condoned True's actions because he did not discipline True for calling him racially derogatory names. While Kastler did state that True was not disciplined for calling Plaintiff racial epithets, the Inspector also clarified that the investigation had not been initiated on this ground but rather centered on the racially charged conversation Plaintiff alleged he had with True. Neither Kastler nor the Institutional Inspector mentioned if disciplinary actions had been taken against True as a result of the investigation. There are no allegations in the Complaint which reasonably suggest Kastler encouraged or condoned True's alleged comments to Plaintiff.

Finally, Plaintiff fails to asserts sufficient facts to suggest True denied him equal protection. In making an equal protection challenge, Plaintiff bears the initial burden of demonstrating that a discrimination of some substance has occurred against him which has not occurred against other individuals who were similarly situated. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Clements v. Flashing*, 457 U.S. 957, 967 (1982). The use of racially

derogatory language, while unprofessional and deplorable, does not violate the Constitution. *See Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir.2002) (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir.1987); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.), clarified on rehearing, 186 F.3d 633 (5th Cir.1999). Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987) (per curiam) (Eighth Amendment); *Patton*, 822 F.2d at 700 (due process); *Williams*, 180 F.3d at 705–06 (equal protection). *See generally Shabazz v. Cole*, 69 F. Supp.2d 177, 199–201 (D. Mass.1999) (collecting cases). While True's comments may have been offensive, "unprofessional and deplorable," his actions did not deprive Plaintiff of equal protection of the laws.

### Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

*/s/Dan Aaron Polster 12/12/13*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

---

[1]    28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.